Jennifer Meredith (JM 4816)
Meredith & Keyhani, PLLC
330 Madison Avenue
6th Floor
New York, New York 10017
Telephone (212) 760-0098
Facsimile (212) 202-3819

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
Pitbull Productions, Inc.,                     )
                          Plaintiffs,          )
                                               )
                                               )
                                               )            07 CIV 9898 (CM)(HP)
                          v.                   )
                                               )
Vishara Video, Inc., Vihan's Video, Inc.       )
dba Vihara Video, Vihan's Video, Inc.,         )
John Does 1-10,                                )
                          Defendants           )
                                               )
-------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION                                                                1

II.  FACTUAL BACKGROUND                                                         1

   A.  Plaintiff's trademarks are known and recognized by consumers            1

   B.  Defendants' sell Counterfeit Copies of Plaintiffs' Products             1

III.  PLAINTIFFS ARE ENTITLED TO A PRELIMINARY
    INJUNCTION ENJOINING DEFENDANTS' ACTS OF
    TRADEMARK COUNTERFEITING AND
    TRADEMARK INFRINGEMENT                                                     2

   A.  Likelihood of Success of the Merits                                     2

   B.  Defendants' distribution of Counterfeit images and
       unauthorized content is Irreparably Harming Plaintiffs'
       Marks and Goodwill Associate Therewith                                  4

   C.  The balance of equities tip sharply in favor of plaintiffs             5

IV.  PLAINTIFFS ARE ENTITLED TO A PRELIMINARY
    INJUNCTION          ENJOINING DEFENDANTS'
    ACTS OF COPYRIGHT INFRINGEMENT                                            6

   A.  Plaintiffs own valid copyrights                                        6

   B.  Counterfeit goods are direct copies of all constituent
       elements of the copyrighted works that are original                   7

V.  PLAINTIFF SHOULD NOT BE REQUIRED TO POST A BOND                           7

VI.  CONCLUSION                                                               8

TABLE OF CASES

Arrow Fastener v. Stanley Works
    59 F.3d 384, 390 (2d Cir.1995)    3

Brennan's Inc. v. Brennan's Restaurant, L.L.C.
    360 F.3d 125, 129 (2d Cir.2004)    4

Cartier Intern. B.V. v. Liu,
    2003 WL 1900852, * 1-2 (S.D.N.Y. Apr. 17, 2003)    6

Chambers v. Time Warner, Inc.
    282 F.3d 147, 155 (2d Cir.2002)    3

Church of Scientology Int'l v. Elmira Mission of the Church of Scientology
    794 F.2d 38, 41 (2d Cir.1986)    5

Estee Lauder, Inc. v. Watsky
    323 F. Supp. 1064, 1068 (S.D.N.Y. 1970)    5

Federal Express Corp. v. Federal Espresso, Inc
    201 F.3d 168, 173 (2d Cir.2000)    2

Feist Publications Inc. v. Rural Tel. Serv. Co., Inc.
    499 U.S.  340, 361 (1991)    6

Gen. Motors Corp. v. Gibson Chem. & Oil Corp.    5
    786 F.2d 105, 109 (2d Cir.1986)

Gucci America, Inc. v. Duty Free Apparel, Ltd.
    286 F.Supp.2d 284, 287 (S.D.N.Y.2003)    3

Hasbro Bradley, Inc. v. Sparkle Toys, Inc.
    780 F.2d 189, 192 (2d Cir.1985)    6

Hasbro, Inc. v. Lanard Toys, Ltd.
    858 F.2d 70, 73 (2d Cir.1988).    2

In re Vuitton et fils S.A.
    606 F.2d 1, 4 (2d Cir.1979)    1

Inwood Labs., Inc. v. Ives Labs., Inc.
    456 U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)    4

King v. Innovation Books
    976 F.2d 824, 831 (2d Cir.1992)     4

Lane Capital Management, Inc. v. Lane Capital Management, Inc.
    192 F.3d 337, 345 (2d Cir.1999)     3

Louis Vuitton S.A. v. Lee
    875 F.2d 584 (7th Cir. 1989)     5

Malletier v. Burlington Coat Factory Warehouse Corp.
    426 F.3d 532, 537 (2d Cir.2005)     2

Omega Imp. Corp. v. Petri-Kine Camera Co.
    451 F.2d 1190 (2d Cir 1971)     5

Phillip Morris USA Inc. v. Felizardo
    2004 WL 1375277, at *5 (S.D.N.Y.2004)     3, 4

Polaroid Corp. v. Polarad Elecs. Corp.
    287 F.2d 492, 495 (2d Cir.1961)     3

Streetwise Maps, Inc. v. VanDam, Inc.
    159 F.3d 739, 742-43 (2d Cir.1998)     3

Temple University v. White
    941 F.2d 201, 219 (3d Cir. 1991)     7

Video Trip Corp. v. Lightning Video, Inc.
    866 F.2d 50, 51-52 (2d Cir.1989)     6

William R. Warner & Co. v. Eli Lilly & Co.
    265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924)     4

## I.    INTRODUCTION

Defendants Vishara Video, Inc., Vihan's Video, Inc. dba Vihara Video, Vihan's Video, Inc. (collectively referred to as "Defendants") have without authorization or consent, misappropriated Plaintiffs trademarks, trade dress and copyrights for use in connection with their DVD and video business.   Specifically, Defendants in reckless disregard of trademark and copyright laws and Plaintiffs' trademark rights and copyrights sell counterfeit copies of Plaintiff's DVDs without the permission of Plaintiffs.

Defendants' willful and intentional infringement of Plaintiffs' trademarks, trade dress and copyrights has and continues to irreparably harm Plaintiffs' trademarks, Plaintiffs' copyrights, Plaintiffs' goodwill and Plaintiffs' rightful market position.   In view of the foregoing, Plaintiffs respectfully request that this Court issue (i) a temporary restraining order against Defendants enjoining any distribution and posting of  Plaintiffs' trademarks and utilizing Plaintiffs content; and (ii) an order to show cause why a preliminary injunction should not issue.

## II.    FACTUAL BACKGROUND

A.    Plaintiff's trademarks are known and recognized by consumers.

Plaintiffs, as a result of extensive marketing and promotion efforts, as well as the high quality of their products have become known and recognized among consumers. Plaintiffs marketing efforts, combined with quality product, have resulted in consumer recognition and sales.   Plaintiffs have applied for and been granted copyrights and trademarks for their DVDs, logos and images.   See attached Exhibit A and Exhibit C. Plaintiffs also have common law trademark rights in all titles sold.   See attached Exhibit B.

B.    Defendants' sell Counterfeit Copies of Plaintiffs' Products

Defendants have sold counterfeit copies of Plaintiff's DVD's.   See Desmond Aff., attached hereto as Exhibit D, Paragraphs 2-7.

III.    **PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' ACTS OF TRADEMARK COUNTERFEITING AND TRADEMARK INFRINGEMENT.**

Once a violation of the Trademark Act of 1946, 15 U.S.C. § 1051, et seq., as amended (the "Lanham Act") is demonstrated, injunctive relief will readily issue pursuant to Section 34 thereof, 15 U.S.C. §1116.[1]  "To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir.2005) (quoting Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168, 173 (2d Cir.2000)). "In trademark disputes, 'a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm." ' Malletier, 426 F.3d at 537 (quoting Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir.1988)); see also In re Vuitton et fils S.A., 606 F.2d 1, 4 (2d Cir.1979) (purpose of counterfeit goods "is to confuse the buying public into believing it is buying the true article").   Once Plaintiff has established Defendants are selling counterfeit goods, trademark infringement is inventible and therefore a preliminary injunction should issue.

A.    Likelihood of Success of the Merits

Section 32 of the Lanham Act prohibits the use in commerce, without consent, of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods," in a way that is likely to cause confusion with plaintiff's registered trademarks. 15 U.S.C. § 1114(1)(a). Section 43(a) prohibits similar conduct, though it is not limited to registered trademarks, and deems liable for false designation of origin "[a]ny person who ... uses in commerce any container for goods ... name, symbol, device ... or any false designation of

---

[1] See, e.g., *Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir. 1979); *Boston Professional Hockey Ass'n v. Dallas Cap Emblem MFG., Inc.*, 510 F. 2d 1004, 1013 (5th Cir.), *Cert. Denied*, 423 U.S. 868 (1975); *Warner Bros., Inc. v. Gay Toys, Inc*., 658 F.2d 76 (2d Cir. 1981).

origin ..which is likely to cause confusion." 15 U.S.C. § 1125(a); *see also* <u>Chambers v.</u> <u>Time Warner, Inc.</u>, 282 F.3d 147, 155 (2d Cir.2002). Liability is established under both Sections 32 and 43(a) of the Lanham Act if a plaintiff can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are "likely to cause confusion." <u>Arrow Fastener v. Stanley Works</u>, 59 F.3d 384, 390 (2d Cir.1995). Certificates of registration with the U.S.P.T.O. are "prima facie evidence that the mark[s][are] registered and valid (i.e. protectible), that the registrant owns the mark[s], and that the registrant has the exclusive right to use the mark[s] in commerce." <u>Lane Capital Management, Inc. v. Lane Capital Management, Inc.</u>, 192 F.3d 337, 345 (2d Cir.1999); 15 U.S.C. § 1067(b)("A certificate of registration of a mark ... shall be prima facie evidence of the validity of the registered mark"). Exhibit A is a list of Plaintiffs registered trademarks. Thus, the plaintiff has established that its marks are valid and entitled to protection under the Act.

In considering the likelihood of confusion, district courts generally apply eight nonexclusive factors, known as the *Polaroid* factors: (1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers. <u>Streetwise Maps, Inc. v. VanDam, Inc.</u>, 159 F.3d 739, 742-43 (2d Cir.1998)(citing <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir.1961). However, in cases involving counterfeit marks, "the Court need not undertake a factor-by-factor analysis under *Polaroid* because counterfeits, by their very nature, cause confusion." <u>Gucci America, Inc. v. Duty Free Apparel, Ltd.</u>, 286 F.Supp.2d 284, 287 (S.D.N.Y.2003); <u>Phillip Morris USA Inc. v. Felizardo</u>, 2004 WL 1375277, at *5 (S.D.N.Y.2004). Thus, the Court "need only determine the more fundamental question of whether there are items to be confused in the first place--that is, whether the items at issue here are, in fact, counterfeit, and whether Defendants sold those items." <u>Gucci America, Inc.</u>, 286 F.Supp.2d at 287. Defendants are selling counterfeit copies of Plaintiffs DVDs. They are of a lesser quality and generally scanned in copies or pictures

3

of actual DVD covers.  See Desmond Aff., attached hereto as Exhibit D, Paragraphs 2-7. The Supreme Court has endorsed a "theory of secondary liability for trademark infringement that comes very close to aiding and abetting." *Id.* at 1432 (citing William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924)). The theory of contributory infringement, as it came to be known, requires proof of either an intent to induce another to infringe a trademark or continued supply of goods or services to one whom the supplier (contributory infringer) knows or has reason to know is engaging in trademark infringement. Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 854, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); *AT & T,* 42 F.3d at 1432. Thus, the actions undertaken by the supplier of services (contributory infringer) enable an infringer to confuse or deceive the ultimate consumer. *See* 4 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 25:18, at 25-43.

In this case, Plaintiffs have provided an affidavit that the items at issue are counterfeit and unauthorized.  See Attached D.  The purchased goods may be examined and are also clear evidence of their counterfeit nature.  Accordingly, defendant actions caused a likelihood of consumer confusion, and plaintiff has established liability under Sections 32 and 43(a) of the Lanham Act. *See* Philip Morris USA Inc. v. Felizardo, No. 03 Civ. 5891 (HB), 2004 WL 1375277 (S.D.N.Y. June 18, 2004)).

B.    Defendants' distribution of Counterfeit images and unauthorized content is Irreparably Harming Plaintiffs' Marks and Goodwill Associate Therewith

The Second Circuit has stated that establishing a high probability of confusion as to source or sponsorship inevitably establishes irreparable harm to a trademark owner.[2] Plaintiffs have demonstrated a likelihood of confusion, and.. "proof of a likelihood of confusion establishes ... irreparable harm." Brennan's Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 129 (2d Cir.2004)..  The Court of Appeals has stated that "a presumption of irreparable harm arises in Lanham Act cases once the plaintiff establishes likelihood of success," King v. Innovation Books, 976 F.2d 824, 831 (2d Cir.1992)

---

[2] *Home Box office, Inc., v. Showtime/ movie Channel, Inc.* 832 F.2d 1311 (2d Cir. 1987)(a showing of likelihood of confusion as to source or sponsorship established the risk of irreparable harm as well as the requisite likelihood of success on the merits).

(*emphasis added*), that "a preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion," Church of Scientology Int'l v. Elmira Mission of the Church of Scientology, 794 F.2d 38, 41 (2d Cir.1986) (emphasis added), and that "a showing of confusion ... ordinarily will establish that a risk of irreparable harm exists," Gen. Motors Corp. v. Gibson Chem. & Oil Corp., 786 F.2d 105, 109 (2d Cir.1986) (emphasis added).

In Omega Imp. Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir 1971) the Court of Appeals stated that irreparable harm "almost inevitably follows" from a likelihood of confusion for a number of reasons: It is difficult to calculate the profits a defendant obtained, and that would therefore be disgorged, due to its use of plaintiff's mark; confusion may cause consumers to reject both plaintiff's and defendant's products; and calculating lost sales due to defendant's infringement is extremely difficult. Id at 1195. These factors are present in virtually every case, which explains this Circuit's general rule that irreparable harm follows from likelihood of confusion.

C.    The balance of equities tip sharply in favor of plaintiffs

The equities of this case tip sharply in favor of plaintiffs, whose lawful trademarks are being unlawfully infringed. See Louis Vuitton S.A. v. Lee, 875 F.2d 584 (7th Cir. 1989) ("As between the 'innocent infringer' who seeks to get off scot-free, and the innocent infringed who has neither engaged in any inequitable conduct nor sought treble damages or treble profits or indeed any part of the defendant's profits that is attributable to the defendant's superior efficiency rather than to the plaintiffs trademark, the stronger equity is with the innocent infringed."); Estee Lauder, Inc. v. Watsky, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970). Courts have also noted that the public is entitled to protection from counterfeiting offered by injunctive relief. See Estee Lauder, 323 F. Supp. at 1068. As the court in Estee Lauder stated, "It would be irresponsible for a court to permit the defendants, whether in good faith or otherwise, to palm off spurious products on credulous public. The community is entitled to receive for its money the product which it believes it is buying." Id. at 1068.  The only effect of the injunction on the defendants

will be to prevent them from engaging in illegal conduct. <u>Hard Rock Cafe, 955 F.2d at 1143</u>; <u>Cartier Intern. B.V. v. Liu, 2003 WL 1900852, * 1-2 (S.D.N.Y. Apr. 17, 2003)</u> (Griesa, J.). If the defendants truly intend not to engage in illegal conduct, then the temporary restraint of such conduct will not adversely affect them. If, however, the defendants intend to continue their illegal and infringing conduct, then the injunctive relief will serve its intended purpose and protect Plaintiffs valuable trademark rights.

## IV.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' ACTS OF COPYRIGHT INFRINGEMENT.

In a copyright action, irreparable injury is presumed upon a showing of a prima facie case of copyright infringement. *See* <u>Video Trip Corp. v. Lightning Video, Inc.,</u> 866 F.2d 50, 51-52 (2d Cir.1989); <u>Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,</u> 780 F.2d 189, 192 (2d Cir.1985). To establish a prima facie case of copyright infringement, a Plaintiff must show "1) Ownership of valid copyright, and 2) Copying of constituent elements of the work that are original." <u>Feist Publications Inc. v. Rural Tel. Serv. Co., Inc.,</u> 499 U.S. 340, 361 (1991).  Under the Copyright Act, the owner of a copyright has the exclusive right to both reproduce and distribute copies of the owner's copyrighted work. *See* 17 U.S.C. § 106. Title 17 "prohibits infringement by anyone who violates '[a]ny of the exclusive rights of the copyright owner." Thus, reproducing or distributing copies of another's copyrighted work is a violation of the Copyright Act.

A.    Plaintiffs own valid copyrights

Where the plaintiff timely obtains a certificate of registration from the U.S. Copyright Office, such certificate "constitute[s] prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 401(c).  In the case at hand, plaintiffs have numerous registered copyrights, See attached Exhibit C.

6

      B.     Counterfeit goods are direct copies of all constituent elements of the copyrighted works that are original

The present instance involves counterfeit goods, that directly copy elements of the works that are original. Accordingly, plaintiffs can establish a prima facie case of copyright infringement and irreparable injury is presumed, supporting Plaintiffs entitlement to a preliminary injunction enjoining defendants' acts of copyright infringement. Specifically, the Defendants copied the DVD content and the covers with the TP logo have been illegally copied.

Plaintiffs have shown that they are likely to succeed on the merits of their claims, and that they will suffer irreparable injury from defendants' Counterfeiting activities.

## V.    PLAINTIFF SHOULD NOT BE REQUIRED TO POST A BOND

The Court, in granting a preliminary injunction, may waive the posting of a bond. See Temple University v. White, 941 F.2d 201, 219 (3d Cir. 1991)("While Rule 65(c) does state that a plaintiff shall post a security bond before a district court may grant a preliminary injunction, we have acknowledged, on several occasions, that there may be instances in which a strict reading of Rule 65(c) would be inappropriate.") Fed. R. Civ. P. 65. In determining whether a bond is necessary, or the amount of the bond, the Court may take into consideration a number of factors, including the Plaintiff's ability to respond in damages and the strength of the showing of likelihood of success.

In the present case, any harm defendant may suffer due to issuance of a temporary restraining order and/or preliminary injunction is limited and results solely from Defendants' deliberate decision to reproduce Plaintiff's copyrighted property and misappropriate their trademarks. Plaintiff's DVDs have copyright notices prominently displayed and Defendants chose to proceed willfully in the face of the warning that such notices convey. Any harm to the Defendants is due to their own behavior and Plaintiff should not be further prejudiced by being required to place a bond to prevent further infringement of their Intellectual Property. Additionally, the effect of the injunction on the defendants will be to prevent them from engaging in illegal conduct.

## VII.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully urge this Court to grant an order (i) temporarily restraining Defendants from allowing the distribution of and making unauthorized copies and selling counterfeit DVDs and images bearing Plaintiffs' trademarks and utilizing Plaintiffs copyrighted (both registered and unregistered) content; (ii) an order to show cause why a preliminary injunction should not issue.

Dated: November 19, 2007                    Respectfully submitted,


                                    By:    /s/ Jennifer Meredith

                                           Jennifer Meredith (JM-4816)
                                           Dariush Keyhani (DK-9763)
                                           Meredith & Keyhani, PLLC
                                           330 Madison Avenue
                                           6th Floor
                                           New York, NY 10017
                                           (646) 546-5253 direct dial
                                           (212) 760-0098 main line
                                           (212) 202-3819 Facsimile
                                           Attorneys for Plaintiffs

## **EXHIBIT A**

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36 and 38

**United States Patent and Trademark Office**

Reg. No. 3,192,256
Registered Jan. 2, 2007

## TRADEMARK
### PRINCIPAL REGISTER



PITBULL PRODUCTIONS, INC. (DELAWARE CORPORATION)
SUITE 2S
200 E. 116TH STREET
NEW YORK, NY 10029

FOR: PRE-RECORDED CD'S, VIDEO TAPES, LA-SER DISKS AND DVD'S FEATURING ADULT EN-TERTAINMENT USING BLATINO MODELS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 4-0-2005; IN COMMERCE 4-0-2005.

SER. NO. 78-725,369, FILED 10-3-2005.

BONNIE LUKEN, EXAMINING ATTORNEY

Int. Cl.: 41

Prior U.S. Cls.: 100, 101 and 107

## United States Patent and Trademark Office

Reg. No. 3,129,121
Registered Aug. 15, 2006

### SERVICE MARK
### PRINCIPAL REGISTER

# THUG PORN

PITBULL PRODUCTIONS INC. (PREVIOUS USE BY RELATED COMPANY CYBER GRAPHICS INDUSTRIES) (DELAWARE CORPORATION)

PO BOX 550244

NORTH WALTHAM, MA 02455

FOR: PRODUCTION OF VIDEO IN THE ADULT ENTERTAINMENT FIELD, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 12-20-1998; IN COMMERCE 12-20-1998.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PORN", APART FROM THE MARK AS SHOWN.

SER. NO. 78-627,873, FILED 5-11-2005.

ANGELA M. MICHELI, EXAMINING ATTORNEY

Int. Cl.: 41

Prior U.S. Cls.: 100, 101 and 107

Reg. No. 2,938,064

# United States Patent and Trademark Office

Registered Apr. 5, 2005

## SERVICE MARK
### PRINCIPAL REGISTER



PITBULL PRODUCTIONS INC. (DELAWARE CORPORATION)
PO BOX 550244
NORTH WALTHAM, MA 02455

FOR: PROVIDING ENTERTAINMENT SERVICES IN THE NATURE OF ON-LINE ADULT ENTERTAINMENT BY MEANS OF A WORLD WIDE WEBSITE, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 12-16-2003; IN COMMERCE 12-16-2003.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SINCE 2003", APART FROM THE MARK AS SHOWN.

SER. NO. 78-376,524, FILED 3-1-2004.

CHERYL CLAYTON, EXAMINING ATTORNEY

Int. Cl.: 41

Prior U.S. Cls.: 100, 101 and 107

**United States Patent and Trademark Office**

Reg. No. 2,934,966

Registered Mar. 22, 2005

## SERVICE MARK
### PRINCIPAL REGISTER

# THUGPORN.COM

PITBULL PRODUCTIONS INC. (DELAWARE CORPORATION)
PO BOX 550244
NORTH WALTHAM, MA 02455

FOR: PROVIDING ENTERTAINMENT SERVICES IN THE NATURE OF ON-LINE ADULT ENTERTAINMENT BY MEANS OF A WORLD WIDE WEBSITE ON THE INTERNET, IN CLASS 41 (U.S. CLS. 100, 101 AND 107).

FIRST USE 12-16-2003; IN COMMERCE 12-16-2003.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-376,333, FILED 3-1-2004.

CHERYL CLAYTON, EXAMINING ATTORNEY

Int. Cls.: 9 and 16

Prior U.S. Cls.: 2, 5, 21, 22, 23, 26, 29, 36, 37, 38 and 50

**United States Patent and Trademark Office**

Reg. No. 2,975,836
Registered July 26, 2005

## TRADEMARK
### PRINCIPAL REGISTER



PITBULL PRODUCTIONS, INC. (BAHAMAS CORPORATION)
PO BOX 550244
NORTH WALTHAM, MA 02455

FOR: VIDEOTAPES FEATURING ADULT ENTERTAINMENT, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 12-17-1998; IN COMMERCE 1-1-1999.

FOR: PHOTOGRAPHS, MAGAZINES AND CALENDARS FEATURING ADULT ENTERTAIN-

MENT, IN CLASS 16 (U.S. CLS. 2, 5, 22, 23, 29, 37, 38 AND 50).

FIRST USE 12-17-1998; IN COMMERCE 1-1-1999.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "SINCE 2003", APART FROM THE MARK AS SHOWN.

SER. NO. 78-337,523, FILED 12-7-2003.

KATHRYN COWARD, EXAMINING ATTORNEY

## **EXHIBIT B**

**Pitbull Production Titles**

ALL AROUND PLAYAZ
BEST OF THUGPORN.COM
BIG BOOTY GANGBANG
BLACK HOLES
BOTTOMS UP
DILLON, THE ONE
HOT & CREAMY
LOVE OF THE DICK 1
LOVE OF THE DICK 2
LOVE OF THE DICK 3
LOVE OF THE DICK 4
LOVE OF THE DICK 5
LOVE OF THE DICK 6
LORD OF DA PINGA
MEATWACKERS 1
MEATWACKERS 2
MEATWACKERS 3
MEATWACKERS 4
MEATWACKERS 5
PACKIN PAPI
PAPI GOT FLAVA
RIPPED & READY
TIGER TYSON - IN THE HEAT
TIGER TYSON - SECRETS
TIGER TYSON STRIKES BACK
STEEL CURTAIN
STRAIGHT MEAT
TAKE 'EM DOWN 1
TAKE 'EM DOWN 2
THE SHOW 1
THE SHOW 2
THE WAY YOU LIKE IT
THUGZILLA'S BITCH  HUNT

**<u>EXHIBIT C</u>**

COPYRIGHT REGISTRATIONS

| TITLE | REGISTRATION NUMBER |
| --- | --- |
| best of thugporn | pa 1-333-964 |
| black holes | pa 1-333-944 |
| bottoms up | pa 1-334-063 |
| dillon the one | pa 1-375-450 |
| hot & creamy | pa 1-383-958 |
| lord of the pinga | pa 1-375-467 |
| love of the dick volume 1 | pa 1-375-451 |
| love of the dick volume 2 | pa 1-375-461 |
| love of the dick volume 3 | pa 1-379-732 |
| Love ot the dick volume 4 | pa 1-374-151 |
| meat whackers volume 1 | pa 1-375-453 |
| meat whackers volume 2 | pa 1-375-462 |
| meat whackers volume 3 | pa 1-375-464 |
| meat whackers volume 4 | pa 1 373-805 |
| meat whackers volume 5 | pa 1 373-945 |
| menace to str8 thugs | pa 1-377-050 |
| Packin papi | pa 1-367-610 |
| pain in da azz | pa 1-375-465 |
| papi got flava | pa 1-375-446 |
| ripped n ready | pa 1-375-466 |
| steel curtain | pa 1-375-463 |
| straight meat | pa 1-333-963 |
| TAKE EM DOWN 1 | pa 1-373-797 |
| take em down 2 | pa 1-366-908 |
| The Show Part 1 | pa 1-333-942 |
| The Show Part 2 | pa 1-375-445 |
| thugzillas bitch hunt | pa 1-375-452 |
| tiger tyson secrets | pa 1-375-443 |
| tiger tyson strikes back | pa 1-375-448 |

**<u>EXHIBIT D</u>**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------x
Pitbull Productions, Inc.,                           )
                        Plaintiffs,                  )
                                                     )
                                                     )
                                                     )
                v.                                   )        AFFIDAVIT
                                                     )
Vishara Video, Inc., Vihan's Video, Inc.             )
dba Vihara Video, Vihan's Video, Inc.,               )
John Does 1-10,                                      )
                        Defendants                   )
                                                     )
-----------------------------------------------------x
```

I, Edward Desmond, being duly sworn, deposes and says:

      1.     I am an agent of plaintiff Pitbull Productions, Inc.

      2.     On November 2, 2007 I was told that two (2) stores, Vishara Video, Inc. and Vihan's Video, Inc., in New York were not re-ordering our DVDs from our distributor. This was unusual given their pattern of ordering.

      3.     I went to the first store, Vishara Video, Inc. at 797 8th Avenue and purchase two DVDs, Love of the Dick, Vol. 2 ($34.95) and Meatwackers, Vol. 4 ($39.95) which with tax ($6.27) cost a total of $81.17.

      4.     I went to a store with the sign Vihan's Video, Inc. and purchased Bottoms Up marked at ($34.95) but the cashier rounded it up when ringing it up and entered it as $35.00 and Dillon The One ($39.95) again the cashier rounded this up to $40.00 while ringing it up plus tax $6.28 for a total of $81.28. The receipts at the store with the signage saying Vihan's Video, Inc. say Vihara Video, 592 W 8th Avenue, New York, New York 10019.

      5.     On November 2, 2007 the goods were taken to my office at 200 East 116th Street, Suite 2N, New York, New York 10029 to examine the items. Each of the DVDs were inexpensive counterfeits, with copied cover and DVD-R's with purple backs.

      6.     I counted approximately thirty (30) videos for sale a Vishara Video, Inc. and each of the DVD's appeared counterfeit.

7.    I counted approximately twenty five (25) videos for sale at Vihan's Video, Inc. and each of the DVD's appeared counterfeit.

DATED: 6-NOV- 07

EDWARD DESMOND

Marisol Cartagena
Notary Public, State of New York
Registration #01CA5072236
Qualified in New York County
My Commission Expires: 03/20/20//